ANAMAR MENÉNDEZ GONZÁLEZ, ROSAIMA E. RIVERA SERRANO, CARLOS VICENTE VILLEGAS DEL VALLE, EDWIN FRANCISCO RIVERA OTERO, GABRIELA FIRPI MORALES y ASTRID BURGOS NIEVES, recurridos, *v.* UNIVERSIDAD DE PUERTO RICO y su PRESIDENTA, DRA. NIVIA FERNÁNDEZ HERNÁNDEZ; DRA. CARMEN HAYDEÉ RIVERA VEGA, en su capacidad como RECTORA INTERINA DEL RECINTO DE RÍO PIEDRAS, y DR. CARLOS PÉREZ DÍAZ, en su capacidad como PRESIDENTE DE LA JUNTA DE GOBIERNO DE LA UNIVERSIDAD DE PUERTO RICO, peticionarios.

*Número:* CC-2017-419          *Resuelto:* 19 de mayo de 2017

*Enrique G. Figueroa Llinás*, de *Bobonis, Bobonis & Rodríguez Poventud*, abogado de la parte peticionaria; *Pedro R. Vázquez Pesquera*, abogado de la parte recurrida.

## SENTENCIA

Por estar igualmente dividido el Tribunal, *expedimos el recurso de "certiorari" solicitado y se confirma la Sentencia emitida por el Tribunal de Apelaciones, Región Judicial de San Juan, el 5 de mayo de 2017.*

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez proveería "ha lugar" a la Moción en Auxilio de Jurisdicción y expediría la Petición de *Certiorari*. La Juez Asociada Señora Rodríguez Rodríguez proveería "ha lugar" a la Moción en Auxilio de Jurisdicción, expediría la Petición de *Certiorari* y emitió una opinión disidente. El Juez Asociado Señor Colón Pérez proveería "ha lugar" a la Moción en Auxilio de Jurisdicción, expediría la Petición de *Certiorari* y emitió

una opinión disidente. El Juez Asociado Señor Rivera García no intervino. Los Jueces Asociados Señores Martínez Torres y Estrella Martínez se inhibieron.

(*Fdo.*) Juan Ernesto Dávila Rivera
*Secretario del Tribunal Supremo*

— O —

Opinión disidente emitida por la Juez Asociada Señora Rodríguez Rodríguez.

I

En el 2010, una mayoría de este Tribunal pautó, en *U.P.R. v. Laborde Torres y otros I,* un derrotero nefasto el cual denominé como "un golpe mortal a la Universidad de Puerto Rico y a nuestro sistema democrático [...]". *U.P.R. v. Laborde Torres y otros I,* 180 DPR 253, 330 (2010). Ello, pues la catalogación de la Universidad de Puerto Rico como un foro público por designación se sustentó en un análisis privado de historia; desligado totalmente de la finalidad social que cumplen las instituciones de educación superior.

El carácter *sui generis* que reviste a la Universidad de Puerto Rico surge del vínculo existente entre esta institución y la sociedad, ya que ésta es fruto de la traducción de la democracia a un espacio físico que pretende servir a la libertad de asociación y de expresión. Así lo reconoce la propia Ley Orgánica de la Universidad de Puerto Rico y la jurisprudencia federal. Asimismo, cabe señalar, que el carácter particular de la Universidad la ha convertido, históricamente, también en un flanco de ataque, particularmente por quienes poco toleran la diversidad que conlleva la democracia.

## II

Ante nuestra consideración pende un dictamen emitido por el foro apelativo intermedio, que complica aún más el panorama antes señalado. El 5 de mayo de 2017, este Foro emitió una Sentencia mediante la cual ordenó a la Universidad de Puerto Rico, y demás demandados, a restablecer el acceso al Recinto de Río Piedras. Ello, en desatención de normas elementales del derecho procesal. En particular, considero necesario enfocarme en una, a saber, la falta de parte indispensable.

La Regla 16.1 de Procedimiento Civil regula lo concerniente a la acumulación de partes indispensables, y a esos efectos dispone que

> [l]as personas que tengan un interés común sin cuya presencia no pueda adjudicarse la controversia, ser harán partes y se acumularán como demandantes o demandadas, según corresponda. Cuando una persona que deba unirse como demandante rehúse hacerlo, podrá unirse como demandada. 32 LPRA Ap. V.

En esencia, una *parte indispensable* es una que tiene un interés de tal grado sobre la controversia " 'que no puede dictarse un decreto final entre las partes en la acción sin lesionar y afectar radicalmente su interés, o sin permitir que la controversia quede en tal estado que su determinación final haya de ser inconsistente con la equidad y una conciencia limpia' ". *Cirino González v. Adm. Corrección et al.*, 190 DPR 14, 46 (2014). Véase *Pérez Rosa v. Morales Rosado*, 172 DPR 216, 222–223 (2007). Según hemos comentado, la importancia de identificar la parte indispensable irremediablemente se relaciona con dos axiomas, "primero, en la protección constitucional que impide que las personas sean privadas de su libertad o propiedad sin un debido proceso de ley, y segundo, en la necesidad de que se emita un decreto judicial completo". *Colón Negrón et al. v. Mun. Bayamón*, 192 DPR 499, 510 (2015). Véase *Cepeda*

*Torres v. García Ortiz*, 132 DPR 698, 704 (1993). Por ello, en reiteradas ocasiones hemos expresado "que la omisión de incluir una parte indispensable incide sobre el debido proceso de ley que cobija al ausente". *Bonilla Ramos v. Dávila Medina*, 185 DPR 667, 677 (2012). Véanse: *Romero v. S.L.G. Reyes*, 164 DPR 721 (2005); *Carrero Suárez v. Sánchez López*, 103 DPR 77, 81–82 (1974).[1]

Ciertamente, la determinación sobre la necesidad de acumular una parte, por ésta ser indispensable, es una tarea que le corresponde a los tribunales. Véase *Unisys v. Ramallo Brothers*, 128 DPR 842 (1991). Claro está, una determinación a esos efectos tiene que fundamentarse en los hechos específicos del caso. Véanse: *Sánchez v. Sánchez*, 154 DPR 645, 678 (2001); *Granados v. Rodríguez Estrada II*, 124 DPR 593 (1989). Por ello, no podemos realizar un examen simplista del asunto, sino que tenemos el deber de realizar "un ejercicio de consideración pragmática de los intereses implicados". *Cirino González v. Adm. Corrección et al.*, supra, pág. 46.

En el presente caso, el Tribunal de Primera Instancia tuvo el beneficio de examinar, con detenimiento, las alegaciones de las partes demandantes y la prueba testifical y documental que se presentó durante la vista de *injunction* preliminar y *mandamus*, celebrada el 4 de abril de 2017. A raíz de esa evaluación, el foro primario correctamente concluyó que,

[s]egún la prueba desfilada y el propio testimonio de la parte demandante, quienes están en el Recinto de Río Piedras y ejercen control e impiden el acceso al mismo son estudiantes y

---

[1] Por otra parte, al identificar aquello denominado como "interés común" hemos precisado que "no se trata de cualquier interés en el pleito. Tiene que ser 'de tal orden que impida la confección de un decreto sin afectarlo'". *Cirino González v. Adm. Corrección et al.*, 190 DPR 14, 46 (2014). Véase, además, *Hernández Agosto v. López Nieves*, 114 DPR 601, 607 (1983). A saber, un interés de tal orden que impida la confección de un derecho adecuado sin afectarle o destruirle radicalmente sus derechos. *Pérez Rosa v. Morales Rosado*, 172 DPR 216 (2007). Éste, además, tiene que ser real e inmediato y no puede ser especulativo o futuro. Véase *García Colón et al. v. Sucn. González*, 178 DPR 527, 549 (2010).

"personas relacionadas con el paro", que no son la parte demandada en este caso, ni sus oficiales, agentes, sirvientes(as), empleados(as), abogados(as), como tampoco, son personas que actúan de acuerdo o participen activamente con éstos. Sencillamente, *estas personas que están impidiendo el acceso a la UPR no figuran como parte en este caso y ello responde, únicamente, a la contención de la parte demandante de que estas personas no son parte indispensable por el hecho de que no están obligadas contractualmente con los demandantes. Ello, choca expresamente con la Regla 16.1 de Procedimiento Civil* [...] (Énfasis suplido). *Anamar Menéndez González y otros v. Universidad de Puerto Rico y otros*, SJ2017CV00111, en Apéndice de la Petición de *certiorari*, págs. 111–112.[2]

En su Sentencia, el Tribunal de Apelaciones correctamente reconoció que, como regla general, los foros apelativos no tienen la facultad de sustituir las determinaciones de hecho que realiza el Tribunal de Primera Instancia. Véase *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007). Claro está, también atinó al identificar que este principio cede cuando se demuestra un craso abuso de discreción, o que el foro recurrido actuó con pasión, prejuicio y parcialidad o error manifiesto. Véase, por ejemplo, *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 709 (2012).

A pesar de lo anterior, el foro apelativo intermedio ignoró las determinaciones de hecho que fueron consignadas en la Sentencia Parcial del foro primario con relación a la

---

[2] Es preciso recalcar que surge claramente de la relación de hechos que se consignó en la Demanda enmendada presentada por los recurridos, que —en todo momento— éstos hacían alusión a que "los estudiantes" eran los que estaban impidiendo la entrada al Recinto de Río Piedras. Véase Apéndice de la Petición de *certiorari*, págs. 111–112. Asimismo, es esencial destacar algunas de las determinaciones de hecho que fueron consignadas en la Sentencia como fundamento para la determinación del foro primario. A saber, la demandante, Srta. Astrid Burgos, "testificó que 'la Administración de la Universidad no es la que está impidiendo el paso'. Esta admitió, además, que " 'las personas impidiendo el acceso son las personas relacionad[a]s con el paro' ". Íd., pág. 101. Por otro lado, otra de las demandantes, la Srta. Rosaima Rivera Serrano, testificó que " 'no sé quién cerró los portones, me enteré por la prensa' ". No obstante, la Srta. Rivera Serrano testificó, además, que " 'no he intentado ir a coger clases por que temo por mi seguridad. Quienes estaban en los portones eran estudiantes. No eran guardias' ". Íd., pág. 102. Además, las partes, como elemento de los hechos estipulados, indicaron que "[n]ingún funcionario de la UPR ni ninguno de sus agentes ha impedido el acceso de persona alguna ni ha puesto barrera de clase alguna en las entradas del Recinto de Río Piedras". (Énfasis suprimido). Íd., pág. 103.

falta de parta indispensable. Incluso, tras admitir que no contaba con una reproducción o transcripción de la prueba oral vertida ante el tribunal de Instancia. Véase *Anamar Menéndez González y otros v. Universidad de Puerto Rico y otros*, KLCE201700730, en Apéndice de la Petición de *certiorari*, pág. 209. En vez, razonó que en consideración a las obligaciones entre las partes, la acumulación de los "terceros que se encuentran impidiendo el acceso al Recinto no son parte indispensable [...]". Íd., pág. 212.

Discrepamos. En reiteradas ocasiones este Tribunal ha expresado que "[a]nte la ausencia de una parte indispensable, el tribunal carece de jurisdicción para resolver la controversia. Es por ello que, al incidir tal ausencia en la jurisdicción del tribunal, debe desestimarse la acción". *Bonilla Ramos v. Dávila Medina*, supra, págs. 677–678. Véase *Pérez Rosa v. Morales Rosado*, supra. Tal resultado no se condicionó al tipo de recurso que fuera presentado.

Por otra parte, al evaluar el presente caso, es imprescindible que el derecho no sea aplicado en abstracción a las realidades que circundan esta controversia. Desde el 6 de abril de 2017, el estudiantado de la Universidad de Puerto Rico, Recinto de Río Piedras, emitió un voto de huelga indefinida que aún sigue en efecto. Por lo tanto, es un hecho —según surge del expediente del caso— que son *los estudiantes* quienes ostentan el control físico de las vías de acceso al recinto universitario.

Sin duda, las relaciones contractuales entre las partes no alteran esa realidad. Es por ello que, el 11 de mayo de 2017, día en que las partes recurrentes habían sido ordenadas a restablecer el acceso al recinto, fracasaron en su encomienda. Evidentemente, resulta absurdo, en este caso, exigir que remedien la situación sólo a quienes no son partícipes de los actos que impiden el acceso al recinto. No tiene sentido alguno encontrar incurso en desacato a una parte por desobedecer un dictamen que le resulta imposible cumplir por su cuenta.

Asimismo, es inverosímil pretender que la imposición de sanciones —que sólo resulta en un malgasto de los escasos fondos públicos que figuran en las arcas del Gobierno— remedie la realidad inalterada. Ciertamente, esta situación insensata evidencia los peligros de conceder un remedio incompleto y que el foro apelativo no ponderase las consecuencias ulteriores de su dictamen. En consideración a lo anterior, estimo que en este caso hace falta una parte indispensable y, por ende, erró el Tribunal de Apelaciones al revocar la Sentencia Parcial emitida por el foro primario.

## III

Según comentamos, lamentablemente, hoy continúan latente los efectos de *U.P.R. v. Laborde Torres y otros I*, pero bajo un panorama aún más desalentador pues, al parecer, las líneas de nuestro sistema republicano de gobierno se han desdibujado, lo cual ha puesto en jaque el principio de separación de poderes. Por ende, ante los eventos que hemos vivido como puertorriqueños en días recientes, no puedo concluir sin expresar mi más profunda indignación y consternación con los viles ataques que ha sufrido la Juez del Tribunal de Primera Instancia, encargada del caso de autos.[3]

En consideración a la Sentencia Parcial que ésta emitió declarando *"no ha lugar"* a la solicitud de interdicto preliminar y *mandamus*, afloraron los ataques injustificados contra su persona. A manera de ejemplo, se tildó de "activista", "de estar prejuiciada", "de causar desasosiego" y

---

[3] En repetidas ocasiones hemos pautado que, como jueces, debemos abstenernos de hacer comentarios de índole política, salvo cuando éstos se hagan precisamente en defensa de la independencia judicial. *In re Mercado Santaella*, 197 DPR 1032 (2017); *In re Hernández Torres*, 167 DPR 824, 846 (2006). A mi entender, ante un ataque a la función judicial para adelantar juegos políticos, expresarse no es meramente permisible, sino también apremiante para cumplir a cabalidad con nuestra función como custodios de la institución donde los ciudadanos depositan su confianza en la Justicia. En el caso de autos, mi deber como Juez Asociada, y más que nada mi conciencia, me exigen expresarme en defensa de la independencia judicial.

aún de "agitar la violencia". Para estas serias alegaciones, no se ofreció un ápice de evidencia que las sustentaran. Incluso, no se ofreció prueba alguna para apoyar la conclusión de que la juez emitió su dictamen por motivaciones impropias, lo cual ciertamente sería sancionable bajo nuestros Cánones 2 y 8 de Ética Judicial, 4 LPRA Ap. IV-B.

Como todos sabemos, Puerto Rico vive días aciagos que requieren de todos, particularmente de sus líderes, respeto, tolerancia y adhesión inquebrantable al principio republicano que representa la separación de poderes. Debemos todos procurar que con nuestras actuaciones no deslegitimemos la función judicial en este País. Quizás en otros países las noticias se suprimen, las verdades se declaran falsas y a los jueces se les insulta y amedrenta. Pero aquí no. Ante una determinación adversa en un tribunal de justicia, uno puede estar en desacuerdo con su dictamen. De ocurrir, como bien hicieron las partes en esta ocasión, existen los mecanismos procesales para atender las insatisfacciones ante los foros apelativos.

— O —

Opinión disidente emitida por el Juez Asociado Señor Colón Pérez.

A través de esta breve Opinión disidente hacemos constar que, en esta etapa de los procedimientos, hubiésemos provisto "ha lugar" a la Moción en Auxilio de Jurisdicción, así como a la Petición de *Certiorari* presentada en el caso de referencia y, en consecuencia, hubiésemos revocado la determinación del Tribunal de Apelaciones. Ello, por entender que —como correctamente decidió el Tribunal de Primera Instancia—, bajo las circunstancias del presente caso, no era posible autorizar el *injunction* y *mandamus* solicitados. Particularmente, además de no cumplir con varios de los requisitos procesales de los remedios de *injunction* y *mandamus*, el grupo de estudiantes demandan-

tes no acumuló a una parte indispensable para la correcta disposición del caso ante nos; entiéndase, a quienes presuntamente obstaculizan e impiden la entrada al Recinto de Río Piedras de la Universidad de Puerto Rico.

Como hemos visto, la ausencia de esa parte indispensable sobre la cual el Tribunal no tiene jurisdicción es la que, en esencia, ha tornado ineficaz, además de difícil de ejecutar, el dictamen del foro apelativo intermedio.

Ahora bien, lo anterior no es óbice para hacer una exhortación a las partes en controversia —la Universidad de Puerto Rico y los estudiantes— para que den inicio, o continúen, si ya lo han hecho, a un diálogo franco y sincero que permita poner fin a la huelga que mantiene cerrado el primer centro docente del país. Lejos de buscar alternativas que inviten a la confrontación, en el escenario tan tenso que enfrenta la Universidad, vemos en la *comunicación* la herramienta más eficaz para poner fin a las controversias que allí se viven. Es tiempo de que nuestros estudiantes, futuro de nuestro país, regresen a su casa de estudios. Recordemos que *"sin estudiantes no hay Universidad, sin Universidad no hay país"*. A esa reflexión se les invita.